## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| POSITIONING UNIVERSAL INC.,<br><br>                           Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA; THE UNITED STATES TRADE REPRESENTATIVE; U.S. CUSTOMS & BORDER PROTECTION,<br><br>                    Defendant. | **Court No. 23-00053** |

## <u>COMPLAINT</u>

Plaintiff, POSITIONING UNIVERSAL INC. ("Plaintiff"), by and through its attorneys, alleges and states as follows:

1.	This action concerns Defendants undertaking of a trade war not authorized by the narrow parameters of U.S. statutory authority found at section 301 of the Trade Act of 1974 ("Trade Act").

2.	The escalation of the trade war through the imposition of a third and fourth rounds of tariffs on products imported from the People's Republic of China and covered by the so-called "List 3" and "List 4." See, *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019). It represents the same cause of action for the Plaintiff as was filed in

*HMTX Industries LLC, et al. v. United States*, Case No. 20-00177 and *In Re Section 301 Cases*, Case No. 21-cv-00052-3JP1.[1]

3.      Section 304 of the Trade Act (19 U.S.C. § 2414) required the USTR to determine what action to take, if any, within 12 months after initiation of that investigation.

4.      The Office of the United States Trade Representative ("USTR") conducted an investigation into China's unfair intellectual property policies and practices pursuant to Section 301 of the Trade Act (19 U.S.C. § 2411).  The investigation was initiated on August 18, 2017.

5.      The list 3 tariffs were implemented on September 21, 2018. The list 4 tariffs were implemented subsequently.

6.      USTR therefore failed to issue List 3 and List 4 within that one-year window.

7.      USTR may not fall back on the "modification" authority under Section 307 of the Trade Act (19 U.S.C. § 2417) to salvage List 3 and List 4.  Section 307 of the Trade Act does not permit USTR to expand the imposition of tariffs to other imports from China for reasons that are unrelated to the scope of the investigation.

8.      Yet USTR did promulgate the List 3 and List 4 duties.  These decisions to impose and then alter the tariff rates were in response to China's retaliatory duties and other issues unrelated to the original grounds for the Section 301 measures.

9.      The arbitrary manner in which Defendants implemented the List 3 and List 4 tariff actions also violates the Administrative Procedure Act ("APA").  USTR failed: (1) to provide sufficient opportunity for comment, *e.g.*, requiring interested parties to simultaneously submit affirmative *and* rebuttal comments *on the same day*; (2) to consider relevant factors required by the

---

[1] Per Standard Procedure Order No. 21-01 in *In Re Section 301 Cases* which contemplates that "similar actions may subsequently be filed in this court,"  Plaintiff requests that the current case be added to the Schedule of Cases covered by *In Re Section 301 Cases*.

statue when making its decision, *e.g.*, undertaking no analysis of the supposed "burden" imposed on U.S. commerce by China's unfair policies; and (3) to connect the record facts to the choices it made.

10.     USTR also failed to adequately respond to the over 6,000 comments on List 3 and almost 3,000 comments on List 4, in violation of the APA's standards.

11.     Therefore, this complaint asks that the Court set aside Defendants' actions as *ultra vires* and otherwise contrary to law.  Defendants should be required to refund all duties collected under Lists 3 and List 4 as applicable to Plaintiff, including interest accrued.

## JURISDICTION

12.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1581(i)(1)(B), which confers exclusive jurisdiction to the Court over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue."  See, 28 U.S.C. § 1581(i)(1)(B).

## PARTIES

13.     Plaintiff, an Australian private limited company, was and is an importer of various goods subject to section 301 tariffs on List 3 and/or List 4.

14.     Defendant United States of America imposed, assessed and collected the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

15.     USTR is an executive agency of the United States charged with investigating a foreign country's trade practices under Section 301 of the Trade Act and implementing "appropriate" responses, subject to the direction of the President.  USTR conducted the Section 301 investigation at issue and made numerous decisions regarding List 3 and List 4.

16.     Ambassador Robert Lighthizer formerly held the position of U.S. Trade

Representative and served as the director of the USTR. In these capacities, he made numerous decisions regarding List 3 and List 4. Defendant Ambassador Kathrine C. Tai currently serves as USTR.

17.    Defendant U.S. Customs & Border Protection ("CBP") collects duties on imports. CBP collected payments made by Plaintiff to account for the tariffs imposed by USTR under Lists 3 and 4.

18.    Defendant Troy Miller is the Acting Commissioner for CBP. In this capacity, he oversees CBP's collection of duties paid by Plaintiff under List 3 and List 4. Mark A. Morgan was the Acting Commissioner of CBP while List 3 and List 4 tariffs were being assessed against Plaintiff's imports.

## STANDING

19.    Plaintiff has standing to sue because it was "adversely affected or aggrieved by agency action within the meaning of" the APA per 5 U.S.C. § 702. Title 28 U.S.C. § 2631(i) states that "[a]ny civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of Section 702 of title 5."). The tariffs imposed by Defendants pursuant to List 3 and List 4 adversely affected and aggrieved Plaintiff by requiring the payment of these unlawful duties.

## TIMELINESS OF THE ACTION

20.    A plaintiff must commence an action "within two years after the cause of action first accrues." See, 28 U.S.C. § 2636(i). Such action here takes place under 28 U.S.C. § 1581(i)(1)(B).

21.    This lawsuit contests action taken by Defendants in imposing section 301 tariffs in List 3 and List 4 and Plaintiff's obligation to pay tariffs upon importing List 3 and List 4 products.

See, *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018); *Notice of Modification of Section 301 Action: China's Acts, Polices, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43, 204 (Aug. 20, 2019). Plaintiff's claims accrued upon liquidation of its entries subject to List 3 and List 4 tariffs, at which time CBP determined those duties to be final, and thus Plaintiff has timely filed this action with respect to all such entries that were not already liquidated as of the date two years prior to this action being filed. Alternatively, Plaintiff's claims accrued upon its deposit of List 3 and List 4 tariffs at the time of entry, and thus Plaintiff has timely filed this action with respect to all such entries filed within the previous two years of this action.

22.    Plaintiff's claims accrued at the earliest on September 21, 2018, when USTR published notice of List 3 in the *Federal Register. Id.*    Plaintiff has therefore timely filed this action as it pertains to entries of goods that have liquidated under List 3 and/or List 4a within 2 years of today's date.

## **RELEVANT LAW**

23.    Section 301 of the Trade Act authorizes USTR to investigate a foreign country's trade practices for "unreasonable or discriminatory" practices. See, 19 U.S.C. § 2411(b).  Once an investigation shows such practices exist, the USTR may impose appropriate tariffs on imports from the country that engages in the unfair practice. *Id*., § 2411(b), (c)(1)(B).

24.    USTR is required under Section 304 of the Trade Act to determine its course of action within 12 months after the initiation of the underlying investigation. *Id.* § 2414(a)(1)(B), (2)(B).

25.    Thereafter, Section 307 of the Trade Act allows USTR to "modify or terminate"

actions already taken under Section 301 either when the "burden or restriction on United States commerce" imposed by the foreign country's practice has either "increased or decreased" or when the action "is no longer appropriate." See, § 2417(a)(1)(B), (C). No such "modification" decision was ever published.

## PROCEDURAL HISTORY

### I.   USTR's Investigation

26.   On August 14, 2017, the former President Trump directed Ambassador Lighthizer to consider initiating an investigation pursuant to Section 301(b) of the Trade Act concerning China's laws, policies, practices, and actions related to intellectual property, innovation, and technology. See, *Addressing China's Laws, Policies, Practices, and Actions Related to Intellectual Property, Innovation, and Technology*, 82 Fed. Reg. 39,007 (Aug. 17, 2017). The issue was stated by the former President as whether Chinese laws and actions on intellectual property, innovation, and technology may "inhibit United States exports, deprive United States citizens of fair remuneration for their innovations, divert American jobs to workers in China, contribute to our trade deficit with China, and otherwise undermine American manufacturing, services, and innovation." *Id.*

27.   On August 18, 2017, USTR formally initiated its investigation into "whether acts, policies, and practices of the Government of China related to technology transfer, intellectual property, and innovation are actionable under [Section 301(b) of] the Trade Act." See, *Initiation of Section 301 Investigation; Hearing; and Request for Public Comments: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 82 Fed. Reg. 40,213 (Aug. 24, 2017).

28.   Seven months later, on March 22, 2018, USTR announced the results of its investigation, concluding that certain "acts, policies, and practices of the Chinese government

related to technology transfer, intellectual property, and innovation are unreasonable or discriminatory and burden or restrict U.S. commerce." See, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Findings of the Investigation Into China's Acts, Policies, And Practices Related to Technology Transfer, Intellectual Property, and Innovation Under Section 301 of The Trade Act of 1974* (Mar. 22, 2018).

29.    USTR based these findings on a host of factors. USTR did not, however, quantify the burden or restriction imposed on U.S. Commerce by the investigated practices.

30.    In March 2018, USTR indicated that it would "propose additional tariffs" of 25% *ad valorem* "on certain products of China, with an annual trade value commensurate with the harm caused to the U.S. economy resulting from China's unfair policies." See, *Actions by the United States Related to the Section 301 Investigation of China's Laws, Policies, Practices, or Actions Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 13,099 (Mar. 27, 2018).

## II.    Lists 1 & 2

31.    Defendants then undertook a series of actions to remedy the estimated harm to the U.S. economy caused by the investigated unfair practices.    The U.S. government ultimately imposed Section 301 tariffs on imports from China covered by the so-called Lists 1 and 2.

32.    On April 6, 2018, USTR published notice of its intent to pursue tariffs the first tranche of merchandise (List 1) subject to an additional duty of 25 percent.  *See, Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 83 Fed. Reg. 14,906, 14,907 (Apr. 6, 2018).  The products on the so-called List 1 covered "approximately $50 billion in terms of estimated annual trade value for

calendar year 2018." *Id.* at 14,907. USTR explained that $50 billion "commensurate with an economic analysis of the harm caused by China's unreasonable technology transfer policies to the U.S. economy, as covered by USTR's Section 301 investigation." See, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Under Section 301 Action, USTR Releases Proposed Tariff List on Chinese Products* (Apr. 3, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/april/under-section-301action-ustr.

33.    On June 20, 2018, USTR finalized List 1 subject to an additional duty of 25%. See, *Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 28,710 (June 20, 2018). USTR also announced that it intended to impose a 25% *ad valorem* duty on List 2 Chinese products, in order to "maintain the effectiveness of [the] $50 billion trade action". *Id.* at 28,712. USTR announced a proposed "List 2" covering 284 tariff subheadings with "an approximate annual trade value of $16 billion." *Id.* at 28,711-12.

34.    On August 16, 2018, USTR published the final List 2 of products subject to an additional duty of 25% *ad valorem* in List 2. See, *Notice of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 40,823, 40,823-24 (Aug. 16, 2018).

## III.    List 3 and List 4

35.    Following USTR's announcement of the results of its investigation in March 2018, Defendants expanded the scope of the tariffs imposed under Section 301 of the Trade Act to cover imports worth more than $500 billion—ten times the amount it had deemed "commensurate" with the findings of USTR's original investigation. Defendants did so for reasons untethered to the unfair

practices that USTR had investigated.

    A.     <u>List 3</u>

36.    Shortly after the former President Trump directed USTR in April 2018 to consider imposing duties on $50 billion in Chinese products, China promptly threatened to impose retaliatory duties on the same value of imports from the United States.  In response, the former President Trump instructed the USTR to consider whether $100 billion of additional tariffs would be appropriate under Section 301 due to "China's unfair retaliation." See, THE WHITE HOUSE, *Statement from Donald J. Trump on Additional Proposed Section 301 Remedies* (Apr. 5, 2018).

37.    On June 18, 2018, the former President Trump acknowledging that China's threatened retaliatory "tariffs on $50 billion worth of United States exports" motivated his decision, instructed USTR to consider imposing additional duties on products from China with an estimated trade value of $200 billion—despite USTR having not yet implemented List 1 and List 2.  See, THE WHITE HOUSE, *Statement from the President Regarding Trade with China* (June 18, 2018).

38.    USTR then stated that it would design the newly proposed duties to address China's threatened retaliatory measures, rather than to specifically address any the harms identified in its Section 301 investigation. See, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *USTR Robert Lighthizer Statement on the President's Additional China Trade Action* (June 18, 2018). USTR Robert Lighthizer stated that although Lists 1 and 2 "were proportionate and responsive to forced technology transfer and intellectual property theft by the Chinese", the proposed duties for List 3 products were necessary to respond to the retaliatory and "unjustified tariffs" that China may impose to target "U.S. workers, farmers, ranchers, and businesses".

39.    China retaliated by imposing 25% *ad valorem* tariffs on $50 billion in U.S. goods implemented in two stages of $34 billion and $16 billion on the same dates the United States began collecting its own 25% tariffs under List 1 (July 6, 2018) and List 2 (August 23, 2018).

40.     On July 17, 2018, USTR published notice of its proposal to "modify" the action by maintaining the original $34 billion and $16 billion actions, and by taking "supplemental action" in the form of "an additional 10 percent *ad valorem* duty on [a list of] products [from] China with an annual trade value of approximately $200 billion." See, *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 33,608, 33,608 (July 17, 2018). USTR invoked Section 307(a)(1)(C) of the Trade Act. USTR initially set a deadline of August 17, 2018, for initial comments; August 20-23, 2018, for a public hearing; and August 30, 2018, for rebuttal comments.  See, *id*. at 33,608.

41.     In its notice, USTR confirmed that it had relied on China's decision to impose "retaliatory duties" as the primary basis for its proposed action. *Id*. at 33,609.  USTR explicitly tied the $200 billion in its proposed action to the level of retaliatory duties imposed by China on U.S. imports. *See id.*  Although it pointed to China's retaliatory measures, USTR did not identify any increased burdens or restrictions on U.S. commerce resulting from the unfair practices that USTR had investigated. See, *id.*

42.     On July 10, 2018, Ambassador Lighthizer stated that the proposed action came "[a]s a result of China's retaliation and failure to change its practice." See, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (July 10, 2018).

43.     On the same day, July 10, 2018, the former President Trump suggested that the United States' trade imbalance with China supported the decision.

44.     Ambassador Lighthizer then announced that, in light of China's retaliatory duties, USTR would propose to increase the additional duty from 10% to 25% *ad valorem*. See, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Statement by U.S. Trade Representative Robert*

*Lighthizer on Section 301 Action* (Aug. 1, 2018).  Rather than addressing the practices that USTR investigated pursuant to Section 301 of the Trade Act, Ambassador Lighthizer stated that China "[r]egrettably . . . illegally retaliated against U.S. workers, farmers, ranchers and businesses."  See, *id.*

45.     On August 7, 2018, USTR then proposed "raising the level of the additional duty in the proposed supplemental action from 10 percent to 25 percent." See, *Extension of Public Comment Period Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 38,760, 38,760 (Aug. 7, 2018).  USTR also set new dates for a public hearing over six days ending on August 27, 2018. See, *id.*; *see also* OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Public Hearings on Proposed Section 301  Tariff List* (Aug. 17, 2018) (modifying hearing schedule).

46.     At the same time, USTR adjusted the deadlines for the submission of written comments, setting September 6, 2018, as the new deadline for both *initial and rebuttal* comments from the public. 83 Fed. Reg. at 38,761. That adjustment, deviating from its past practices, prevented both USTR and the public from considering initial comments at the hearing, and left insufficient time for interested parties to review and respond to the initial comments filed by other parties. USTR also limited each hearing participant to five minutes. Docket No. USTR-2018-0026, https://beta.regulations.gov/document/USTR-2018-0026-0001.     Despite     those     restrictions, approximately 350 witnesses appeared at the six-day hearing, and the public submitted over 6,000 comments. See, *id.*

47.     Eleven days after receiving thousands of final comments from the public, the former President Trump announced that he had directed USTR "to proceed with placing additional tariffs on roughly $200 billion of imports from China." See, THE WHITE HOUSE, *Statement from*

*the President* (Sep. 17, 2018). In these remarks dated September 17, 2018, the President made clear that China's response to the $50 billion tariff action (*i.e.*, List 1 and List 2 duties) motived his decision and he immediately promised to proceed with "phase three" of the plan—an *additional $267 billion tariff action* – "if China takes retaliatory action against our farmers or other industries." See, *id.*

48.     On September 21, 2018, USTR announced that List 3 products would be subject to an additional tariffs.  See, 83 Fed. Reg. at 47,974.  The tariffs began at 10% ad valorem tariff that was set to rise automatically to 25% on January 1, 2019. See, *id.*  USTR determined that the List 3 duties would apply to all listed products that enter the United States from China on or after September 24, 2018. *Id.* USTR did not respond to any of the over 6,000 comments that it received or any of the testimony provided by roughly 350 witnesses. See, *id.*

49.     As legal support for its action, USTR for the first time cited to Section 307(a)(1)(B) of the Trade Act, which provides that USTR "may modify or terminate any action, subject to the specific direction . . . of the President . . . taken under Section 301 if . . . the burden or restriction on United States commerce of the denial of rights, or of the acts, policies, or practices, that are the subject of such action has increased or decreased." *Id.* (brackets omitted).  USTR concluded that the relevant burden "continues to increase, including following the one-year investigation period." USTR also concluded that "China's unfair acts, policies, and practices include not just its specific technology transfer and IP polices referenced in the notice of initiation in the investigation, but also China's subsequent defensive actions taken to maintain those policies." See, *id.* USTR also cited Section 307(a)(1)(C) of the Trade Act, arguing that China's response to the $50 billion tariff action "has shown that the current action no longer is appropriate" because "China openly has responded to   the current action by choosing to cause further harm to the U.S. economy, by increasing duties on U.S. exports to China." See, *id.* at 47,975.

50.     In December 2018, and again in February 2019, the previous Administration announced that it would delay the scheduled increase in the List 3 duty rate from 10 to 25%.  See, *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 65,198 (Dec. 19, 2018); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 7,966 (Mar. 5, 2019).

51.     But in May 2019, USTR announced its intent to raise the tariff rate on List 3 goods to 25%. See, *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 20,459 (May 9, 2019) ("*List 3 Rate Increase Notice*"); *see also Implementing Modification to Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 21,892 (May 15, 2019). The May 15, 2019 notice cited to China's decision to "retreat from specific commitments agreed to in earlier rounds" of negotiations as the basis for the increase in the duty rate.  See, *List 3 Rate Increase Notice*, 84 Fed. Reg. at 20,459. As a deviation from its past practice of imposition of new tariffs, USTR did not seek public comment but rather simply announced that the increase would occur. See, *id.*

52.     Recognizing that List 3 would cause substantial harm to U.S. companies and consumers, as well as the U.S. economy, USTR in June 2019 invited the public to seek exclusions from List 3 duties on a product-specific basis. *Procedures for Requests to Exclude Particular Products From the September 2018 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 29,576 (June 24, 2019).

53.     The duties imposed on products covered by List 3 remain in effect as of the date of this Complaint, with the exception of the limited number of products for which USTR granted exclusions. See, *e.g.*, *Notice of Product Exclusions: China's Acts, Policies, and Practices Related to*

*Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 61,674, 61,675 (Nov. 13, 2019). Plaintiff has imported products not subject to exclusions under List 3 and paid duties under List 3.

**B. List 4**

54.     On May 17, 2019, USTR announced its intent to proceed with List 4 at an additional duty of 25% *ad valorem* on products worth $300 billion. See, *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 22,564, 22,564 (May 17, 2019).  USTR explained that its decision was motivated by China's retreat from negotiated trade commitments, and China's further retaliatory action against U.S. commerce. See, *id.*

55.     USTR invited the public to comment on proposed List 4 and participate in a hearing. The public submitted nearly 3,000 comments. Docket No. USTR-2019-0004, https://beta.regulations.gov/document/USTR-2019-0004-0001. Despite the opportunity to comment, the timeline for participation in the hearing left little room for meaningful input: USTR required witnesses to submit drafts of their testimony by June 10, 2019, some seven days before the deadline for fully developed written comments, and then it again limited witnesses to five minutes of testimony at the hearing. See, *id.*

56.     On August 1, 2019, the former President Trump  announced that the List 4 tariffs would become effective September 1, 2019, at a rate of 10% *ad valorem*.  As a basis, the President cited to China's failure to abide with agricultural purchases and the failure to reduce exports of fentanyl.

57.     On August 20, 2019, USTR implemented List 4 in two separate tranches. See, *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to*

*Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019).

List 4A was announced as a 10% *ad valorem* duty effective September 1, 2019.  List 4B was

announced as a 10% *ad valorem* duty effective December 15, 2019. See, *id.* at 43,305.  Once again,

USTR did not address any of the nearly 3,000 comments submitted or any of the testimony

provided by witnesses, other than to claim that its determination "takes account of the public

comments and the testimony."  See, *id.*

58.     As legal support for its action, USTR cited to Section 307(a)(1)(B) and (C) of the

Trade Act, stating that it may modify its prior action taken pursuant to Section 301 of the Trade Act

if (1) "[t]he burden or restriction on United States commerce" imposed by the investigated foreign

country practice "has increased or decreased," or (2) "the action . . . is no longer appropriate." See,

*id.* at 43,304.  However, instead of finding any increased burden on U.S. commerce from the

practices that were the subject of USTR's investigation, USTR merely pointed to "China's

subsequent defensive actions taken to maintain those unfair acts, policies, and practices as

determined in that investigation," including retaliatory tariffs on U.S. imports, retreating from

commitments during negotiations, and devaluing its currency. See, *id.*

59.     On August 30, 2019, USTR published notice of its decision to increase the tariff

rate applicable to goods covered by List 4A and List 4B from 10% to 15%.  See, *Notice of*

*Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology*

*Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 45,821 (Aug. 30, 2019).  USTR

explained that it increased the tariff rate because, shortly after it finalized List 4A and List 4B,

"China responded by announcing further tariffs on U.S. goods." *Id.* at 45,822.  USTR also cited to

China's retreat from its negotiation commitments and devaluation of its currency as grounds for

the action. See, *id.*

60.     On December 18, 2019, as a result of successfully negotiating a limited trade deal

with China, USTR published notice that it would suspend List 4B tariffs.  See, *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 69,447, 69,447 (Dec. 18, 2019). USTR also stated its intent to reduce the tariff rate applicable to products covered by List 4A, *id.*, an action that ultimately became effective on February 14, 2020, when USTR halved the applicable duty rate, *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 3,741 (Jan. 22, 2020).

61.     In the months that followed, the United States and China implemented the limited trade deal that they negotiated near the end of 2019. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *United States and China Reach Phase One Trade Agreement* (Dec. 13, 2019). During that time, Defendants declined to impose additional duties on imports covered by List 4B.

62.     The duties imposed on products covered by List 4A remain in effect as of the date of this Complaint, with the exception of the limited number of products for which USTR granted exclusions. See, *e.g.*, *Notice of Product Exclusions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 48,627 (Aug. 11, 2020). Plaintiff has imported products not subject to exclusions under List 4A and paid duties under List 4A.

## STATEMENT OF CLAIMS

## COUNT ONE

## (DECLARATORY JUDGMENT—VIOLATION OF THE TRADE ACT OF 1974)

63.     Paragraphs 1 through 62 are incorporated by reference.

64.     The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  See, 28 U.S.C. § 2201(a).

65.     The actions taken by Defendants in the implementation and assessment of List 3

and List 4 tariffs were not authorized by law under the Trade Act of 1974.

66.     Pursuant to Section 301 of the Trade Act, USTR may impose tariffs when it determines that "an act, policy, or practice of a foreign country is unreasonable or discriminatory and burdens or restricts United States commerce, and action by the United States is appropriate." See, 19 U.S.C. § 2411(b). USTR failed to predicate its actions giving rise to List 3 and List 4 on any such determination.

67.     If USTR concludes upon investigation that a foreign country maintains an unfair trade practices, Section 304 of the Trade Act requires USTR to "determine what action, if any," to take within "12 months after the date on which the investigation is initiated." 19 U.S.C. § 2414(a)(1)(B), (2)(B). USTR initiated the underlying Section 301 investigation on August 18, 2017.  USTR's action giving rise to List 3 occurred in September 2018 and USTR's action giving rise to List 4 occurred in August 2019, both over a year after USTR initiated the underlying Section 301 investigation on August 18, 2017.

68.     Section 307 of the Trade Act authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act when the burden imposed on U.S. commerce from the foreign country's investigated unfair acts, policies, or practices increases or decreases. See, 19 U.S.C. § 2417(a)(1)(B). Section 307 of the Trade Act, however, does not authorize Defendants to increase tariffs for reasons unrelated to the acts, policies, or practices that USTR investigated pursuant to Section 301 of the Trade Act. Congress did not authorize USTR to escalate its focused investigatory findings into an open-ended trade war.

69.     Section 307 of the Trade Act also authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act if the initial action taken by USTR "is no longer appropriate." 19 U.S.C. § 2417(a)(1)(C). Section 307 of the Trade Act does not authorize Defendants to *increase* tariff actions that are no longer "appropriate," but rather only to delay, taper, or terminate

such actions.

70.     Plaintiff is therefore entitled to a declaratory judgment that Defendants' actions giving rise to List 3 and List 4 are *ultra vires* and contrary to law.

## COUNT TWO

## (VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT)

71.     Paragraphs 1 through 62 are incorporated by reference.

72.     The APA authorizes the Court to hold unlawful and set aside any agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence."  See, 5 U.S.C. § 706(2).

73.     Defendants exceeded their authority as delegated under the Trade Act in promulgating List 3 and List 4, and therefore has acted "not in accordance with the law" and "in excess of statutory authority" for the reasons set forth in Count One, *supra*.

74.     Defendants failed to present any evidence for any asserted "increased burden" from China's intellectual property policies and practices that were the subject of USTR's Section 301 investigation.

75.     Defendants also promulgated List 3 and List 4a in an arbitrary and capricious manner because they did not provide a sufficient opportunity for comment, failed to meaningfully consider relevant factors when making their decisions, and failed to adequately explain their rationale. Defendants' decision-making resulted in the unlawful imposition of tariffs on imports covered by List 3, whose value equals $200 billion, and List 4, whose value equals $300 billion.

* * *

**<u>PRAYER FOR RELIEF</u>**

Wherefore, Plaintiff respectfully requests that this Court:

(1)     declare that Defendants' actions resulting in tariffs on productions covered by List 3 and List 4 are unauthorized by, and contrary to the Trade Act, and are void *in ab initio*;

(2)     declare that Defendants arbitrarily and unlawfully promulgated List 3 and List 4 in violation of the APA;

(3)     vacate the List 3 and List 4A rulemaking;

(4)     order Defendants to refund, with interest accrued, of any Section 301 duties either owing or paid by Plaintiff pursuant to List 3 and List 4 for which Plaintiff is entitled to a refund;

(5)     award Plaintiff its costs and reasonable attorney fees; and

(6)     grant such other and further relief as may be just and proper.

Respectfully submitted,

 /s/ Matt Nakachi
Matt Nakachi
Alena A. Eckhardt

Dated:  March 6, 2023                    Junker & Nakachi, P.C.
50 California Street
Suite 1500
San Francisco, CA  94111

*Counsel for Plaintiff Positioning Universal Inc.*

24

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to U.S. Court of International Trade Rule 4(b) and (h), I hereby certify that on

March 6, 2023, I served a copy of Plaintiff's Summons and Complaint by certified mail, return

receipt requested, upon the following:


Attorney-In-Charge
International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278

General Counsel Greta Peisch
Office of the General Counsel
Office of the U.S. Trade Representative
600 17th Street, NW
Washington, DC 20508

Attorney-In-Charge
Commercial Litigation Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530

Chief Counsel Scott K. Falk
Office of Chief Counsel
U.S. Customs & Border Protection
1300 Pennsylvania Ave., NW
Washington, DC 20229


 /s/ Matt Nakachi

Matt Nakachi